IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Thomas Raiford, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv1562 (RDA/JFA) |
| | ) | |
| Warden B. Cabell, <u>et al.</u>, | ) | |
|     Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>

Thomas Raiford ("Raiford" or "plaintiff"), a Virginia inmate proceeding <u>pro se,</u> filed a civil rights action pursuant to 42 U.S.C. § 1983, and alleged in his amended complaint that while detained by the Virginia Department of Corrections ("VDOC") at the Sussex II State Prison ("Sussex II") Defendants Warden B. Cabell, Unit Manager Perkins, Captain Gill, and Lieutenant Vertucci violated his constitutional rights by placing him in restraints on June 12, 2019.[1] Defendants Cabell, Perkins, and Vertucci have filed a motion for summary judgment supported by an exhibit. [Dkt. Nos. 29, 30, 30-1]. Raiford has been afforded the opportunity to file responsive materials pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and he has responded. [Dkt. Nos. 37, 39]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the defendants' motion for summary judgment must be granted.

Raiford has raised three claims in his amended complaint that relate to an incident that occurred at Sussex II on June 12, 2019 in which he was placed in ambulatory restraints.

1. Defendants Cabell, Perkins, Gill, and Vertucci violated Raiford's Eighth Amendment right to be free from cruel and unusual punishment through the use of excessive force on June 12, 2019 by placing Raiford in ambulatory restraints. [Dkt. No. 11 at 14-15].

2. On June 12, 2019, defendant Cabell violated Raiford's First Amendment

---

[1] Defendant Gill has not been served.

rights by retaliating against Raiford because he complained that his grievances had not been logged by having Raiford placed in ambulatory restraints.  [Id. at 15-16].

3.  Defendants Cabell, Perkins, Gill, and Vertucci violated Raiford's Fourteenth Amendment right to due process when they placed Raiford in ambulatory restraints without notice or a chance to be heard.  [Id. at 16].

The summary judgment motion alleges that Raiford failed to exhaust his administrative remedies before filing suit, and the motion is supported by an affidavit from A. Critton, the Grievance Coordinator at Sussex II.  [Dkt. No. 30-1].  Raiford has filed an affidavit, several documents, and asserts that he has exhausted his administrative remedies.[2]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Defendants, pursuant to Federal Rule of Civil Procedure 56 and E.D. Va. Local Civil Rule 56, set forth a statement of material facts that defendants contend are undisputed.  In response, plaintiff substantially complied with his obligations under those Rules by submitting statements of undisputed and disputed facts, although plaintiff failed to comply with the mandate to cite to specific record evidence.[3]

Accordingly, the following statement of uncontested facts is derived from a review of the Defendants' statement of undisputed facts, the nonmovant's response, Plaintiff's admissions, and

---

[2] Plaintiff's response to the motion for summary judgment has two parts.  The first part is a brief and the second part is a sworn affidavit.  [Dkt. No. 39].  The affidavit does not address exhaustion and is limited to reciting the facts regarding the events of June 12, 2019.  [Dkt. No. 39 at 7-9].  Plaintiff also filed a motion for discovery on August 13, 2021, but his motion did not seek discovery related to the issue of exhaustion.  [Dkt. No. 43].  In addition, Plaintiff did not submit, as required, a declaration or affidavit averring that the information sought was essential to justify his opposition to the motion for summary judgment.  See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.") (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).  Accordingly, the Court denied the motion without prejudice in an Order dated August 31, 2021.  [Dkt. No. 44].

[3] Raiford's original complaint and amended complaint are not sworn.  [Dkt. Nos. 1, 11].  Although he inserted the word "verified" into the first paragraph of his original complaint and amended complaint [Dkt. Nos. 1 at 1, 11 at 7], he did not swear to the either the complaint or amended complaint, nor did he swear to either pleading before a notary.

the record.

1. Raiford is a VDOC inmate currently incarcerated at Sussex II.

2. At all times relevant to the amended complaint, Defendants Cabell, Perkins, Vertucci, and Gill were assigned to Sussex II.

3. On June 12, 2019, at approximately 1:30 p.m., Raiford asked to speak with Warden Cabell while Cabell was touring the cell block in which Raiford was housed.  Raiford complained to Cabell that the grievance coordinator had not been logging his grievances.  Cabell told Raiford that he did not believe the grievance coordinator had not been doing her job.  Raiford became angry and cursed at Cabell.

4. On June 12, 2019, at approximately 1:55 p.m., Warden Cabell returned to Raiford's cell block with Defendants Perkins, Gill, and Vertucci and had Raiford placed in ambulatory restraints.  [Dkt. No. 30-1 at 30].  About one hour after being placed in restraints, Nurse Sadler "check[ed]" Raiford's handcuffs.  [Dkt. No. 39 at 8].

5. The restraints were removed on June 13, 2019 approximately "20 plus hours" after they had been placed on Raiford.  [Dkt. No. 30-1 at 25].

<u>VDOC Grievance Procedures</u>

6. VDOC Operating Procedure ("OP") 866.1, Offender Grievance Procedure, establishes the process for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures.  The grievance process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.  [<u>Id.</u> at 10-23].

7. All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws,

regulations, and matters beyond the control of the VDOC.  Each offender is entitled to use the grievance procedure for problem resolution.  Reprisals are not imposed upon offenders for filing grievances in good faith.  [Id. at. ¶ 5].

8.  Grievances must be submitted within 30 calendar days from the date of the incident. Prior to submitting a regular grievance, the offender must demonstrate that he has made a good-faith effort to informally resolve his complaint.  This may be accomplished by submitting an informal complaint form to the appropriate department head.  Prison staff should respond to the offender's informal complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day time period in which an offender may file a regular grievance.  When filing a regular grievance, the offender must attach any required documentation of his attempt to informally resolve the issue.  Only one issue per grievance form is addressed.  Grievances must be appealed through all available levels of review to satisfy the exhaustion requirement before filing a lawsuit.  [Id. at ¶ 6].

9.  Grievances that do not meet the filing requirements of OP 866.1 are returned to the offender within 2 working days from the date of receipt noting the reason for return on the intake section of the grievance form.  Reasons include, but are not limited to, more than one issue per grievance, expired filing period, repetitive, request for services, etc.  The offender is instructed how to remedy any problems with the grievance when feasible.  A copy is made of all grievances returned to the offender with the justification for return noted on the second page of the grievance form.  If an offender wishes review of the intake decision on any grievance, he may send the grievance to the Regional Ombudsman for a review.  There is no further review of the intake decision.  [Id. at 7].

10.  If a grievance is accepted during the intake process, there are three levels of review available for regular grievances.  Level I reviews are conducted by the Warden or Superintendent of the prison.  If the offender is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education.  For most issues, Level II is the final level of review.  For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance.  The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response.  Expiration of the time limit to include any authorized continuances without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.  [Id. at ¶ 8].

Raiford's Amended Complaint

11.  Raiford's amended complaint lists five actions or inactions of Defendants that he alleges as the basis of his civil action:

- Warden Cabell placed him in ambulatory restraints on June 12, 2019, at approximately 1:55 p.m. after he complained that the grievance coordinator was not logging his grievances [Dkt. No. 11 at 9-11];

- No handheld camera was used when he was placed in ambulatory restraints [Id. at 11];

- There was no nurse present when he was placed in ambulatory restraints [Id.];

- Captain Gill, Lt. Vertucci, and Unit Manager Perkins stood by while restraints were applied on June 12, 2019, and did nothing to help [Id. at 11]; and

- Lt. Vertucci turned off the water to Plaintiff's cell and took away his toilet paper. [Id. at 12].

A. Critton is the Institutional Grievance Coordinator at Sussex II, and has reviewed Raiford's grievance file regarding these five allegations.  [Id. at ¶ 10].

Grievance No. SXII-19-REG-00162

12.  Raiford executed a regular grievance dated June 30, 2019, stating that he had been placed in ambulatory restraints on June 12-13, 2019, and that he was "never checked by medical during or after [he] was taken off of ambulatory restraints." [Dkt. No. 30-1 at 24].[4]  Attached to the grievance was his Informal Complaint No. 03025 dated June 16, 2019, which included the following response dated June 21, 2019, "You were being observed by security during this time. At no time was there a need or call by security for medical assistance."  [Id. at 26].

13.  Raiford submitted a grievance that relied on Informal Complaint No. 03025 and a copy of Informal Complaint No. SXII-19-INF-03025 [Id. at 32-33], along with other Informal Complaints and several unlogged grievances, to the Regional Ombudsman Office Eastern Region ("Ombudsman Unit") for review.  [Id. at 28-36].[5]  The Ombudsman Unit received the grievance that relied on Informal Complaint No. SXII-19-INF-03025 and a copy of Informal Complaint No. 03025, as well as the other documents, on July 30, 2019, as reflected by the

_____

[4] Raiford did not include a claim in the amended complaint that he was denied adequate medical care.  [Dkt. No. 11 at 14-16] (list of claims).  In addition, Raiford admits in his sworn statement that Nurse Adler "check[ed] on his handcuffs about an hour after he was placed in ambulatory restraints.  [Dkt. No. 39 at 8].  Raiford's admission refutes the claim he made in grievance No. SXII-19-REG-00162 that he was not seen by any medical personnel before or after being placed in restraints.

[5] One of the grievances received by the Ombudsman Unit on July 30, 2019, although it relates to the content of the grievance that was logged as No. SXII-19-REG-00162 (which relates to Informal Complaint No. SXII-19-INF-03025), is not identical to the grievance submitted to Critton on August 12, 2019, logged as No. SXII-19-REG-00162.  The grievance sent to the Ombudsman's Unit does not have a log number in the upper right corner and the word "treatment" is deleted on line 5 between the word "medical" and "assistance" on grievance No. SXII-19-REG-00162 [Dkt. Nos. 1-1 at 2; 30-1 at 25].  There are other discrepancies, as well, such as the spacing between words on the grievance received by the Ombudsman's Unit on July 30, 2019, which has no deletion, compared to the grievance filed with Critton.  [Dkt. No. 30-1 at 32].  The grievance referring to Informal Complaint No. 03025 included in the packet of documents received by the Ombudsman's Unit on July 30, 2019 was never filed with Critton at Sussex II.  Instead, Raiford produced a second grievance, which did not exhibit the July 30, 2019 Ombudsman Unit's date stamp (that was not quite identical as indicated herein), and filed that grievance with Critton at Sussex II on August 12, 2019.  Although Raiford attached grievance No. SXII-19-REG-00162, the accompanying informal complaint and Level I and II responses as exhibits [Dkt. No. 1-1], he also attached the three Informal Complaint Nos. SXII-19-INF-03056, -03055, and -03025, and the grievances that accompanied each, as exhibits to his complaint.  [Dkt. Nos. 1 at 1-4, 1-5, 1-6].  See infra, at ¶¶ 20-26.  Neither the complaint, the amended complaint, nor Raiford's response to the motion to dismiss note or explain why a second version of the grievance was created.

Ombudsman Unit's received date stamp on each page.  The Ombudsman Unit immediately sent the grievance and all the attached paperwork back to Raiford on July 30, 2019, with a memorandum that included instructions on how to appeal a Level I response.

14.  As of July 30, 2019, Raiford had not submitted any of the grievances received by the Ombudsman's Unit on July 30, 2019 to Critton at Sussex II.  [Id. at ¶ 13].

15.  Raiford subsequently sent a grievance to Critton at the Sussex II grievance office, which she marked received on August 12, 2019, as noted by the "Received August 12, 2019 Grievance Office Sussex II State Prison" date stamp [Id. at 25], and in the "Date Received" blank on the form she indicated "8-12-19," [Id.]; and the grievance was assigned Log No. SXII-19-REG-00162.[6]  Submitted with that grievance was a copy of Informal Complaint No. SXII-19-INF-03025.  Critton also issued a grievance receipt to Raiford on August 12, 2019, indicating that she had received Grievance SXII-19-REG-00162 on that date. [Id. at 27].

16.  Warden Cabell provided a Level I response on August 22, 2019, and advised Raiford that records indicated that J. Sadler, Health Service Administrator, examined Raiford's restraints on June 12, 2019, at 14:10 hours.  On June 13, 2019, the removal of in-cell restraints was recommended.  A certified medical assistant, M. Boswell, examined him and noted no injuries.  The Level I response determined that Raiford's grievance was unfounded and there was no violation of policy. [Id. at 24].  The restraints were removed at approximately 6:20 p.m. on June 13, 2019.  [Dkt. No. 11 at 13].

17.  Raiford appealed Warden Cabell's decision denying grievance Log No. SXII-19-REG-00162 to Level II.  Regional Administrator G. Holloway provided a Level II response on September 9, 2019, and upheld the Level I response.  The Level II response was sent out to

---

[6] The grievance plaintiff submitted with his original complaint was signed "Date Received" by Critton on "8-12-19." [Dkt. No. 1-1 at 2].

Raiford on September 11, 2019.  [Id. at 41].

18.  Raiford exhausted the available administrative remedies regarding his claim that "he never saw a nurse while in ambulatory restraints."  [Id. at ¶ 17].

Unlogged Grievances

19.  The packet of documents received from Raiford on July 30, 2019 by the Regional Ombudsman Unit included Informal Complaints and several unlogged regular grievances.  [Id. at ¶ 18].

20.  Informal Complaint No. SXII-19-INF-03006, dated June 13, 2019, was in the packet Raiford sent to the Regional Ombudsman's Unit.  Raiford complained that he had turned in three grievances on June 6, 2019 with the informal responses to Critton and that Critton had refused to log his grievances.  The informal complaint accused Critton of intentionally refusing to log the grievances in order to obstruct Raiford's ability to exhaust his grievances.  [Id.].  Critton responded to Raiford on June 17, 2019, and she advised him that his grievance had been received and an intake decision had been made.  [Id. at ¶ 19].

21.  Critton did not intentionally "hold" Raiford's grievances, and Critton processes grievances and complaints when they are received as quickly as possible.  [Id. at ¶ 20].

22.  The packet Raiford sent to the Regional Ombudsman's Unit also included Informal Complaint No. SXII-19-INF-03056, dated June 16, 2019, in which Raiford complained that Warden Cabell had punished him on June 12, 2019, by placing him in ambulatory restraints because he complained that the grievance office was not logging his grievances.  [Id. at 36]. Unit Manager Perkins responded on June 26, 2019, and advised Raiford that he had been placed in ambulatory restraints for kicking the cell door violently and repeatedly, and for refusing to speak to or acknowledge the staff who checked on him.  [Id. at ¶ 22, 38].  The copy of Informal

8

Complaint No. SXII-19-INF-03056 submitted with this civil action in support of his claim that he had exhausted his claim is stamped received by the Ombudsman Unit on July 30, 2019.  [Dkt. No. 1-5 at 1].

23.   The packet Raiford sent to the Regional Ombudsman's Unit also included Informal Complaint No. SXII-19-INF-03055, dated June 16, 2019, in which Raiford complained that he had been denied the chance to be heard regarding the deprivation of his liberty through the use of ambulatory restraints.  [Id. at 30].  Unit Manager Perkins responded on June 26, 2019, and advised Raiford that the time frame during which he had been in restraints complied with the use of restraint policy.  [Id. at ¶ 24].  The copy of Informal Complaint No. SXII-19-INF-03055 submitted with his complaint in support of his claim that he had exhausted this claim is stamped received by the Ombudsman Unit on July 30, 2019.  [Dkt. No. 1-4 at 1].

24.   The filing of an Informal Complaint does not satisfy the exhaustion requirement.  [Id. at ¶¶ 21, 23 25].

25.   The grievances sent to the Ombudsman Unit with Informal Complaint Nos. SXII-19-INF-03055 and SXII-19-INF-03056 were never submitted to Critton at Sussex II.  [Id. at ⁋ 29].

26.   The allegations in Informal Complaint Nos. SXII-19-INF-03055 and SXII-19-INF-03056 are not exhausted because Raiford did not file grievances and obtain a Level I response. Instead, Raiford bypassed the Level I portion of the grievance process by sending the grievances directly to the Ombudsman's Unit and then not filing them with Critton at Sussex II as instructed when the Ombudsman's Unit returned them to Raiford.  [Id. at ⁋⁋ 28-30].

27.   The allegations in Informal Complaint Nos. SXII-19-INF-03006, SXII-19-INF-03055, and SXII-19-INF-03056 are grievable.

9

28.  Raiford did not follow the procedures set forth in OP 866.1 for filing a regular grievance when he sent the paperwork directly to the Regional Ombudsman Unit and bypassing the Grievance Office at Sussex II.  [Id. at ¶ 12].

29.  Raiford therefore did not exhaust the administrative remedies available to him at Sussex II regarding the following issues in his civil action:

- Warden Cabell placed him in ambulatory restraints on June 12, 2019, after he complained that the grievance coordinator was not logging his grievances;
- No handheld camera was used when he was placed in ambulatory restraints;
- Captain Gill, Lt. Vertucci and Unit Manager Perkins stood by while the restraints were applied and did nothing to help; and
- Lt. Vertucci turned off the water to Plaintiff's cell and took away his toilet paper.

30.  These complaints were grieveable and Raiford failed to use the administrative remedies available to him to exhaust these issues.  [Id. at ¶ 31].

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The facts that a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986).  The court will view the evidence and draw all reasonable

inferences in the light most favorable to the non-moving party.  Porter v. U.S. Alumoweld Co.,

125 F.3d 243, 245 (4th Cir. 1997).  Nevertheless, "[o]nly disputes over facts which might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  Anderson, 477 U.S. at 248.

The non-moving party may not defeat a properly supported summary judgment motion

by simply substituting the "conclusory allegations of the complaint or answer with conclusory

allegations of an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).  This

applies even where the non-moving party is a pro se prisoner.  Campbell-El v. Dist. of Columbia,

874 F. Supp. 403, 406-07 (D.C. 1994); see also E.D. Va. Local Civil Rule 7(K)(3) (to defeat a

dispositive motion, a pro se party "must identify all facts stated by the moving party with which

the pro se party disagrees and must set forth the pro se party's version of the facts by offering

affidavits ... or by filing sworn statements . . .").[7]  Unsupported speculation is not enough to

withstand a motion for summary judgment.  See Ash v. United Parcel Serv., Inc., 800 F.2d 409,

411-12 (4th Cir. 1986).  Similarly, "[t]he mere existence of some alleged factual dispute" cannot

defeat a motion for summary judgment; the dispute must be both "material" and "genuine,"

meaning that it "might affect the outcome of the suit under the governing law."  Hooven-Lewis

v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

---

[7] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court."  Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)).  Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011).  Additionally, "summary judgment affidavits cannot be conclusory ... or based upon hearsay."  Evans, 80 F.3d at 962.

with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524.  To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules.  Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions.  Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added);[8] see Graham v. Gentry, 413 F. App'x 660, 662-63 (4th Cir. 2011) (observing

---

[8] Ross held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement" and that "[t]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"  136 S. Ct. at 1862.  Although Raiford does not rely on the exceptions in Ross, the Court finds that the three exceptions in Ross do not apply.  Id. at 1859-60.  First, the grievance process was available to Raiford and he used it in grievance No. SXII-19-REG-00162.  Second, the grievance procedure is straightforward, and as noted Raiford has used it.  Lastly, there is no evidence that the VDOC personnel prevented Raiford from using the grievance procedure or from filing an appeal.  See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances.").  To the contrary, the Ombudsman returned the misfiled papers (which included Raiford's grievances) to him promptly.  Thereafter, Raiford redrafted his grievance related to Informal Complaint No. SXII-19-INF-03025 and filed the grievance, and then appealed the denial of relief through Levels I and II—demonstrating that he knew how to exhaust and that he was not hampered or interfered with in exhausting a grievance that had been included with the other non-logged grievances received by the Ombudsman Unit on July 30, 2019.

that the PLRA requires an inmate "to exhaust any "available" administrative remedies before pursuing a § 1983 action in federal court). The requirement that a prisoner exhaust before filing "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519.

The served defendants acknowledge that Raiford filed informal complaints regarding the claims he has raised in his amended complaint, but assert that Raiford sent the related grievances (with the exception of allegedly no having been seen by medical personnel which was exhausted in Regular Grievance No. SXII-19-REG-0016) to the Ombudsman Unit and did not submit them to Critton at Sussex II. [Dkt. No. 19-30 at 2]. Specifically, the served defendants admit that Raiford filed Informal Complaint No. SXII-19-INF-03056 (alleging Warden Cabell had punished Plaintiff by placing him in ambulatory restraints because he had complained that the grievance office was not logging his grievances) and Informal Complaint No. SXII-19-INF-03055 (alleging Plaintiff had been denied the chance to be heard regarding the deprivation of his liberty through the use of ambulatory restraints). But neither of these informal complaints were grieved in accordance with VDOC's procedures because they were sent to the Ombudsman Unit instead of being submitted to Critton at Sussex II. Each of the two informal complaints received timely responses.

In his unsworn amended complaint, Raiford asserts in a conclusory fashion that he "has exhausted all made available administrative remedies with respect to all claims [i]nvolving all aforementioned defendant(s) relevant to each claim in this suit. See Exhibits." [Dkt. No. 11 at 14]. The exhibits attached to the original complaint confirm that the complaint that he was not

13

seen by medical personnel (No. SXII-19-REG-00162), was exhausted [Dkt. No. 1-1], but the remaining exhibits do not establish that Raiford exhausted the remaining portions of his amended complaint.  In his subsequent response in opposition to the motion for summary judgment, the unsworn portion of the response asserts he has "exhausted his administrative remedies through the grievance procedures according to policy.  See Exhibits 1-4" [Dkt. No. 39 at 4].  The four exhibits Raiford references concern only No. SXII-19-REG-00162 (alleging he was not seen by medical personnel).

Raiford's sworn statement does not create a dispute of fact with regard to exhaustion because Raiford did not aver that he had submitted the two non-logged grievances that involved the allegations in Informal Complaint Nos. SXII-19-INF-03055 and SXII-19-INF-03056, which relate to the claims he is raising in this civil action.[9]  His failure is significant at this juncture of the litigation because he has not denied the relevant and essential point upon which the defendants' motion for summary judgment is predicated.  Indeed, other than his conclusory statement that he has "exhausted his administrative remedies," he does not offer any proof that he submitted the non-logged grievances.  Indeed, Raiford's exhibits establish that they were sent to the Ombudsman and returned to him by mail on July 30, 2019, and that they were not submitted to Critton at Sussex II.  If Raiford was not satisfied with the response to the informal complaints, he had to submit them to Critton at Sussex II, per VDOC's OP 866.1.  [Dkt. No. 30-1 at ¶ 26].[10]  Sending his informal complaints and grievances to the Ombudsman failed to

---

[9] Pursuant to Rule 10(c), exhibits attached to a Complaint are considered as part of the Complaint and in the event of a conflict between the complaint and an exhibit, the exhibit prevails.  Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).  Raiford's exhibits corroborate the defendants' assertion he failed to properly exhaust.

[10] As noted herein, Raiford plainly knew proper procedure for exhaustion—filing an informal complaint, if dissatisfied, filing a grievance, and is still dissatisfied, filing an appeal—because he did so when he filed Grievance No. SXII-19-REG-00162.  [Dkt. 30-1 at. ¶¶ 14-16].  If Raiford had followed the proper procedures, he could have exhausted his administrative remedies on his remaining claims before filing suit on December 6, 2019.  The fault is

comply with VDOC OP 866.1.  Raiford, as the nonmovant, cannot simply make a conclusory statement in support of an alternative factual narrative to demonstrate the existence of a disputed fact; instead, such a response results in the movant's asserted fact being admitted.  See Integrated Direct Marketing, LLC v. May, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015).

Despite his conclusory assertions to the contrary, Raiford failed to exhaust his administrative remedies regarding the following grievable issues that are part of his complaint: that he was placed in ambulatory restraints after complaining that his grievances were not being logged; that a handheld camera was not used; that Gill, Vertucci and Perkins did nothing to help him while restraints were being applied; and that Vertucci turned off the water to his cell and took away his toilet paper.  [Dkt. No. 30-1 at ¶¶ 30, 31].  The PLRA requires "proper exhaustion," meaning Raiford had to "'us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits).'"  Ngo, 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)).  In so holding, the Supreme Court reasoned that "proper exhaustion" enhances "the quality of those prisoner suits that are eventually filed," for, "[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved."  Id. at 95.  Thus, "proper exhaustion" requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90-91.  These "critical procedural rules" specifically include grievance timing requirements, for, otherwise, "a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for

---

all his and his narrative to the contrary ignores his own exhibits.

failing to file on time," and, following rejection of the grievance as untimely, "proceed directly to federal court." Id. at 95.  The PLRA was not intended to "create such a toothless scheme." Id. The PLRA's exhaustion-prior-to-filing requirement is "mandatory" and the language of the PLRA is "unambiguous." Ross, 136 S. Ct. at 1856.  "An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." Id. (quoting Woodford, 548 U.S. at 85) (additional citations omitted)).  Additionally, "a court may not excuse a failure to exhaust." Ross, 136 S. Ct. at 1856.  Raiford's failure to follow the VDOC's policy regarding the submission of grievances on the claims raised in this case renders his claims against Defendants Cabell, Vertucci, and Perkins unexhausted, and the motion for summary judgment will be granted.

Because all of the claims in the amended complaint will be dismissed for failure to properly exhaust, the defendants' other arguments do not need to be considered.

### IV. Conclusion

For the reasons outlined above, the Court grants the served defendants' motion for summary judgment [Dkt. No. 29].  An appropriate Order and judgment shall issue.

Entered this 20 day of September, 2021.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge